Good morning, and may it please the court. My name is Nicole Abercrombie, and I'm appearing as pro bono counsel on behalf of the appellant, Mr. Juan Vega. Thank you very much, by the way, for taking this pro bono. You're welcome. I'd like to reserve two minutes for rebuttal. Okay, watch the clock. It counts down, and I'll try and help you. Okay, thank you. Proceeding pro se in the district court, Mr. Vega adequately stated claims for First Amendment retaliation, First Amendment due process. Mr. Vega was punitively transferred based on no evidence from Pioneer Fellowship House back to federal court, and as a result, he lost a 90-day sentence reduction. Maybe you could start by addressing whether there should even be a Bivens action for any of the three constitutional claims that are before us. Okay, as this court's aware, shortly after we and in a bossy, the court declined to extend Bivens to Fourth and Fifth Amendment claims of a group of alien detainees following 9-11. In its decision, the court clarified long-standing Bivens jurisprudence that Bivens is a disfavored remedy, and that when it is presented in a new context, it should only be extended if there are no special factors, counseling, hesitation, and no alternative remedies are available. And the alternative remedy here, as I understand it, was an administrative grievance proceeding before the Bureau of Prisons, which Mr. Vega availed himself of, which resulted, in fact, in the reversal of the determination. It is true that he filed administrative grievance, and there was a reinstatement of his ability to go to the halfway house. However, the loss of his liberty interest there was not so much the location where he was placed, but the fact that he was punitively transferred based on no evidence. I'm not sure that that responds to the question. He grieved the disciplinary transfer. The Bureau of Prisons agreed with him. They basically reinstated the credit. Now, I assume he's seeking simply monetary damages? Yes, compensatory damages. So, why, in light of the Supreme Court's language in Avasi, why should we extend a Bivens cause of action when he has already had a remedy? It may be not as much as he wants, but he's not left without a remedy here, which he took advantage of. We believe that the remedy that the Bureau of Prisons was able to provide was inadequate because it did not... Well, the Bureau can't do anything more other than to give credit towards the sentence reduction, right? I mean, the Bureau's not in the business of handing out money to inmates when they suffer some wrong that is addressed administratively. No, and we wouldn't argue that. However, he was set to be released in February and was not released, in fact, until April. And so, there was a loss of time there that was based on... What was the original sentence here? Wasn't it 63 months? 63 months, yes. And he was released at what point in that 63-month sentence? I'm not sure. It's the exact number of months. But it's less than 63 months, is it not? Yes, and this was towards the end of his sentence. So, why was the remedy not adequate to address the wrong? Because it went to his... He was transferred based on no evidence in retaliation for pursuing litigation, which was constitutional violations of his First Amendment... Well, does an inmate have a constitutional right to litigate a serving a federal prison sentence? Yes. And what case would you rely on for that constitutional principle? In Silva, the court held that any civil lawsuit, you're protected from active interference. We're not arguing that the court or that the pioneer or federal officials should have affirmatively assisted him, but... What was Silva a habeas case? Because the case law seems to say there might be a potential interference claim if there's interference with a direct criminal appeal or maybe even a habeas challenge. I'm not aware of any case law that extends the principle to every conceivable civil or administrative claim that an inmate might wish to pursue. And this was a disability claim, was it not? It was, and he was also pursuing other cases, including a direct appeal on his underlying criminal sentence. Was there any interference with that appeal? I didn't see anything in the record to that fact. That's not directly, but the cumulative effect of him being denied access to counsel and being moved back... But the counsel that he was seeking access to were lawyers that he wanted to talk to about yet a new claim, right? Yes. The fact that he couldn't come here to our courthouse library to research his disability case. That's correct. Okay. All right. I'd like to turn now to the Minechi case, which the Pioneer employees have relied on to support the proposition that a Bivens remedy may never be extended to cover a private prison official. And we believe that this reading has the potential to immunize private prison officials in such cases like here, where there's no, as we would argue, no alternative remedy. Well, why would we need to? We wouldn't need to get to that, right, if we found that there was an adequate alternate remedy. You're just saying if we do find there is an adequate alternative remedy, that it could extend to these particular individuals. Is that right? I understand your question correctly. No, if there is an adequate alternative, then that's a non-issue. However, we believe that there's not an adequate alternative remedy. Do you want to save some time for May it please the Court. I'm Teal Miller on behalf of the Federal Defendants. I'm going to use six minutes this morning, and the Pioneer House Defendants are going to use four minutes. As the Court's questions suggest, there was an alternative remedy here. Mr. Vega's initial release date was October 2009. He was released in April of 2009. And the sentence was 63 months, so he was released well before his projected release date at the moment of his sentencing. So, counsel, maybe we can start perhaps at the beginning, which is, for me, I'm focused on a concern I have about why he was not permitted to amend in this case. Given our previous rulings about sort of liberal amendment in this case, it seems to me that there are facts that you point out in your briefs that were not alleged to establish claims that potentially could have been alleged as it relates to knowledge. And so why would we not send this case back, even with the direction as it relates to Bivens, but still send the case back saying he should have been given an opportunity to amend? Your Honor, amendment would be futile if the claims are barred by Abbasi. Setting aside that point, amendment would be futile in any event, and here's why. The last claim that was dismissed, which was dismissed in 2013, I believe, like in March of 2013, was a claim that said he couldn't bring his procedural due process claim because it was not based on clearly established law. All the other claims were dismissed five months before. He filed multiple pleadings during that period, and he didn't suggest any facts that would have revitalized those claims. Also, before he filed his motion for leave to amend a second time, he was warned by the Court, you need to comply with the local rules. And then that was at page 46 of the record. Then he filed a motion to amend which didn't comply with the local rules, and the Court said, I'm not going to consider this because you haven't told me how this amendment differs from your current pleading, and you haven't filed a proposed amended complaint. And so he had nine months in which he could have amended his complaint and didn't. And for five of those months, as to all of his claims, except for his procedural due process claim, the Court had already set out how his complaint was defective. Now, as to the procedural due process claim, the Court was correct that those claims were not clearly established. There are sort of two components to those claims. One is that he was denied a liberty interest. Reeb against Thomas at footnote four, this Court's decision, which is at 636 F3D 1224, precludes that allegation. It says, a plaintiff does not have a liberty interest in remaining in an RDAP program. His second theory is this, Burnsworth, no, the Burnsworth theory that there's no evidence. I was convicted on the basis of no evidence. Burnsworth actually uses the phrase, a prison disciplinary conviction based on no evidence. That's not what we have here. We have an allegation. We have a charge. He got process. And that process exonerated him. Procedural due process. Roberts. Is his procedural due process claim that he should have been given the equivalent of a pre-deprivation hearing? Is that his complaint? That is one aspect of his complaint, but that is precluded by Reeb against Thomas. And so he has this backup complaint, which is you don't have to go through the procedural due process. You don't have to go through process if there's no evidence. But that actually, it would be an extension of the Burnsworth line of cases, which concern convictions or adjudications of guilty in a prison discipline system. There may be reasons why, there may be claims that you can't be charged on the basis of no evidence, but they're not due process claims. The remedy for being charged on the basis of no evidence under the due process clause is process. And he got process here. As to the threshold question, whether a Bivens action should be extended to cover these claims, why haven't the Federal defendants waived that argument? We have waived it, Your Honor, but Abbasi represents a sea change in the law, and it's — here's why. Mr. Vegas says, oh, no, this was sort of a gradual change. You could have anticipated that. But Abbasi says for the first time that we have to look at the context for a particular claim on a really granular level. Like, you can't say this Court has recognized a First Amendment right to be free from retaliation before. You have to say in this context, meaning a person in these circumstances against these type of supervisors. But Abbasi doesn't require us to make that determination as specific facts, because we could then never find a Bivens determination, right? If it had to be identical and parallel facts, it would effectively read out any possibility of a Bivens action. That's not what Abbasi says, is it? Your Honor, that's not what Abbasi says, but it comes close. It says, for example, in that case, the fact that you're suing the prison warden as to a prison guard would be a basis where you had to do the new context analysis. Now, that new context analysis might come out to say this isn't really a new context, but here Mr. Vega has conceded we're in a new context. There are no cases in this circuit which recognize, you know, do the Bivens analysis post-Abbasi, certainly, and recognize that there's a cause of action here. For due process or First Amendment for any of them? For any of them. That's right, Your Honor. I should back up. There are Bivens cases for retaliation and procedural due process, but they're pre-Abbasi, and they don't, that I'm aware of, actually analyze whether the cause of action is available. They just assume. It's not litigated. So why wouldn't we allow amendment just as it relates to the retaliation claim where there's some Ninth Circuit law that establishes the possibility of a Bivens action? Well, Your Honor, you shouldn't allow amendment if you agree that Abbasi precludes a Bivens cause of action for amendment. Of course, you could ask the district court to consider that in the first instance, but the district court was correct that he hasn't stated a claim for retaliation, and here's why. Twombly and Iqbal set out a pleading standard that says you have to have a bare minimum factual allegation to show that your claim is plausible. Twombly is a case about conspiracy, antitrust conspiracy, and it says allegations of fact that establish parallel action and then just allege conspiracy aren't good enough. That's basically what we have here. We have an allegation, page 96 of the record, that these, the three Federal defendants and the Pioneer House people had a meeting and decided to gin up a report against Mr. Vega. But there are no facts that make that plausible. But aren't you saying that that could never be established? I mean, no one's ever going to be present during a conspiracy to say, I was there when they agreed. I heard them discuss it in the room, right? So certainly, conspiracy is almost always going to be based upon some inference of connection or knowledge. In this case, you have a timing as it relates to a transfer. You have an alleged meeting, some connection with conversations. Why wouldn't that be enough for us to be able to say he has a possibility of amending to show or to allege some indication that there was knowledge or connection between And I'm really focused on the issue of amendment, not necessarily just the current allegations. Your Honor, he — that claim was dismissed five months before his judgment was entered against him. So he had an opportunity to amend and the Court set out what was wrong with his claim. I don't have — I've gone over my time, but — so I just want to answer really quickly with respect to why the allegations aren't enough. You have to look at the allegations against the particular defendants. Phillips and Straight, there's no allegation they had ever met Mr. Vega before. They had no reason to conspire against him. Mr. Brown, the only allegation is that he participated in one phone call. And if you look at Wattis — I think it's Wattison, which is one of the court's retaliation claims, you see allegations based on an inference from a timeline where the inmate grieved against a particular person and then that person filed a disciplinary complaint. You don't have any of that here. Do you want to give some time? Yes. I would like to — I apologize. We ask that the judge would be affirmed. It happens more often than not. Mr. Bowman, I'll give you a couple extra minutes. Thank you, Your Honor. Good morning. Robert Bowman, appearing on behalf of Respondents Pioneer Human Services and its five individual employees. We'd ask this court to affirm the decisions of the district court dismissing Pioneer and its employees that are subject to this appeal. We find there's two critical factors, determinations made by the district court that are very damaging to Vega's appeal against Pioneer. First, in the district court's order of March 12, 2012, the district court found that Vega suffered no appreciable harm as a result of his transfer out of the Pioneer facility. The court found it was undisputed that Vega was sentenced to 63 months, as you have alluded to earlier, and the transfer out of the Pioneer facility resulted in no additional imprisonment time. Further, he alleged no physical harm and any emotional harm he claims is not actionable without physical injury in the state of Washington. Second, the court held that the FBOP and not Pioneer was the jailer. And even assuming any appreciable harm resulted from the transfer, Pioneer did not the jailer. The court found that Pioneer's role was limited to making a recommendation to the FBOP, and it was the FBOP that made the ultimate determination on the transfer. We've touched on the Bivens claims. We would just point out first and foremost, as the court has, that Mr. Vega did have and In addition, he also had a number of state tort law claims that he has pled against the Pioneer employees, which would also provide an adequate remedy such that a Bivens action is not appropriate. There was also a comment in the briefing about the inability for Mr. Vega to ask for an injunction or perhaps a writ of habeas corpus because those were retrospective type relief rather than prospective. I would just point out that that was just one or a couple of the potential alternatives, the timing of which is somewhat a factor of the strategic decision of when a person initiates their legal... Does it matter, counsel, about whether or not the district court made extensive findings as it relates to alternatives available to Mr. Vega? Because when we send the case back for an elaboration specifically as it relates to alternatives, there are speculations about what alternatives would have been available in this case. It doesn't seem like there's a full record as it relates to findings by the district court regarding the alternatives that were available. I don't necessarily think there's speculation about what was available when you consider that in the pleadings themselves, there's a discussion of the administrative review process, which in effect overturned any alleged wrongful transfer from the Pioneer facility. But do we have findings from the district court about specifically in this instance with respect to Mr. Vega, what would have been available? I'm not exactly sure on that point. Isn't it a question of law? I mean, do we need a district court to look at the statutes and tell us what other remedies are available? The court didn't do that in Pollard. I didn't mean to interrupt you, sir. Oh, that's right. It just seems to me when the case was presented to the Supreme Court on the prison dentist or prison doctor in Pollard, the court simply looked to what other remedies were on the books. Correct, in terms of, and those were state law tort remedies as have been pled in this case. Okay. Thank you very much. You're welcome. Ms. Abercrombie, I'll give you a couple extra minutes if you need it, since I gave you the other side two minutes. I just wanted to address a couple points that the federal employees brought up in their response. With relation to the amendment, we believe that at a minimum this case should be remanded because Mr. Vega, proceeding as a pro se litigant, was not given a notice of the deficiencies in his complaint before it was dismissed or an opportunity to amend. The district court didn't say anything in its order about what was deficient? I thought it did. In the final judgment, the ruling was entered and the final judgment were entered on the same day. Yeah, but doesn't the district court's memorandum decision explain what's wrong with his complaint? I thought it did. Even if it does, it didn't provide him with an opportunity to amend because it was on the same- At nine months. There were new, I mean, it's a fairly complicated record, however, he wasn't given an opportunity to amend. I'm not sure that's right on the timeline, counsel. Are you sure about that? Yes. On the day the final Bivens complaint or claims against the federal employees were dismissed, judgment was entered. Right, but wasn't there an earlier guide from the court as it relates to other claims, Bivens claims? I thought that was just for the due process claim that was left. Was there no guidance in the record from the district court as to what were the deficiencies in the other cause of action? I think that's what Judge Tolman's talking, which I think my recollection is that there was some guidance as well, but we can go back and check that. I mean, the court wrote a 22-page order on November 1st of 2012, which was several months before the court ultimately dismissed the case when it disposed of various motions that were pending. Yes, but that was on different issues. The final judgment and the final order provided no opportunity for amendment, and we think that that was an abuse of discretion. My time is up. Thank you. If you need a couple more minutes, just out of fairness, since I gave the other one. Oh, okay. If you need to. You don't have to take it. I'm just a talker. Thank you. Just one final point. We also believe that the federal employees have waived their Bivens defense. They state that Abbasi was a change in law, and we would disagree with that point. Abbasi reiterated existing Bivens jurisprudence. The disfavored remedy language was not new. It provided additional guidance on the special factor analysis. I think that, notwithstanding the language of the Supreme Court in Bivens, that judicial extensions are disfavored, and that we have to consider special circumstances, which are met here with the administrative remedies, that we should nonetheless kind of thumb our nose at the Supreme Court and do it anyway? No, that's not what I'm saying. Okay, I'm glad. No, we believe that. I mean, we're not afraid to boldly go. No circuit has gone before, but there's a limit. No, we believe that even under the stricter, tightened scrutiny that Abbasi held, that we can see this is a new context, but we believe that there are no special factors that counsel hesitation here, where it's an individual bringing claims against individual actors, and we don't believe that there were alternate adequate remedies. Okay. Thank you. Thank you very much, and thanks again for taking the case. The case just argued is submitted for decision. We will now hear argument in United States v. Paul David Swallow, No. 16-30224.
judges: Tallman, Watford, Boulware